UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Donna R. Gallman, | ) | C/A No. 5:12-2979-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin,[1] Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence, and whether the Commissioner's decision contains an error of law. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Relevant Background

A. Procedural History

Plaintiff applied for DIB and SSI on April 29, 2008, Tr. 151-64, pursuant to Titles II and XVI of the Act, 42 U.S.C. §§ 401-403, and 380-83, *et seq.*, alleging a disability onset date of

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

March 23, 2008. Her applications were denied in initial and reconsidered determinations. Tr. 73-81. On July 14, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 95-96, which was held on November 5, 2010, Tr. 32-72. In a decision dated November 29, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 14-25. Plaintiff requested review of the decision, Tr. 7-8, which was denied by the Appeals Council, Tr. 1-3, making the ALJ's decision the final decision of Defendant (the Commissioner) for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on October 15, 2012. ECF No. 1.

### B. Plaintiff's Background

Plaintiff, born on February 24, 1962, was 46 years old on March 23, 2008, her alleged onset date. Tr. 151. Plaintiff completed two years of college. Tr. 181. Plaintiff has past relevant work ("PRW") in a grocery store as meat manager, deli manager, seafood manager, and meat wrapper. Tr. 178. Plaintiff alleged that she has been unable to work since March 23, 2008, when she was in an automobile accident and sustained hip/shoulder dislocation, liver laceration, and injuries to her right ankle and leg requiring the insertion of pins. Tr. 177. At the time of the hearing, Plaintiff was separated from her husband, and she and her 18-year-old son were living with her mother. Tr. 38.

### C. The Administrative Proceedings

#### 1. Plaintiff's Hearing Testimony

At Plaintiff's November 5, 2010 hearing, she stated that she completed a year-and-a-half of college, and the last time she had a valid driver's license was in 2000. Tr. 39. Plaintiff later testified that she had a valid driver's license on the date of her March 2008 car accident. Tr. 45. Plaintiff stated that she last used alcohol in November 2009 when she was arrested for DUI and

lost her license. Tr. 47. Plaintiff also testified that at that time she "got caught" for having prescription medication without a prescription. *Id.* Plaintiff stated that she last used illicit drugs on the date of her accident. Tr. 48.

Plaintiff testified that her daughter was killed in February 2009. Tr. 49. She stated that she is unable to work because since the death of her daughter she stays in the house, does not "deal with people anymore," communicates with her deceased daughter, has "demon-possessed dreams," and is unable to remember things. Tr. 51. Plaintiff testified that she started seeing a psychiatrist, Dr. Steiner, in June or July of 2009, and continued to see him every two-or-three months. Tr. 52. Plaintiff also testified that she was seen by another counselor, Dr. Patricia Ryan, but Plaintiff's counsel was unaware of this doctor and there are no treatment records in evidence.[2] Tr. 54-56.

Plaintiff testified that she also was being treated for physical problems resulting from her 2008 car accident and issues related to her back. Tr. 56-57. Plaintiff stated she has "cervical disc" and has numbness in her right side from her neck to her waist. Tr. 57. Plaintiff stated that she received injections and has been prescribed medication for her back and neck pain. Tr. 57-58. Plaintiff testified that on a typical day she stays in bed and gets up to use the bathroom. Tr. 58-59. Plaintiff stated that she has loss of appetite and does not eat much. Tr. 59. She testified that she watches TV while lying in bed. *Id.* Plaintiff stated that she was unable to shower because she could not stand on her legs, Tr. 58, and no one helped her with bathing, Tr. 61. Plaintiff testified that she could microwave food and could "barely wash dishes." *Id.* Plaintiff stated that most of the cooking was done by her mother. *Id.*

---

[2] The undersigned notes that in his Psychiatric Attending Physician's Statement of Disability, Dr. Steiner notes that Plaintiff was seen by Patricia Ryan, LISW at the same address [as Dr. Steiner]. Tr. 513.

3

> 2. Vocational Expert ("VE") Testimony

VE Joel D. Leonard testified at Plaintiff's administrative hearing and described Plaintiff's PRW within the past 15 years as follows: meat cutter, heavy skilled; composite stock clerk, meat clerk, meat wrapper, and deli clerk, heavy semi-skilled; and department manager, heavy skilled. Tr. 64-65. The ALJ posed the following hypothetical of an individual of Plaintiff's age, education, and prior work experience:

> [L]imited to performing work with restrictions that require simple, routine tasks in a supervised environment; no required interaction with the public or team type interaction with co-workers. . . . there would be no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking at total of over six hours in an eight hour work day. There would be only occasional stooping, twisting, crouching, crawling, and climbing of stairs or ramps; no kneeling or climbing of ladders or scaffolds; only occasional foot pedals or other controls with the right lower extremity; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery.

Tr. 68. The VE testified that such an individual would be unable to perform any of Plaintiff's PRW and there would be no transferable skills. *Id.* The VE testified that the functional parameters set forth were consistent with unskilled light work to include small products assembler, and process machine tenders and operators. Tr. 69.

The ALJ posed a second hypothetical and asked the VE to assume that Plaintiff's testimony was substantiated by the medical evidence and considered credible. Tr. 70. In response to the ALJ, the VE testified that an individual with the residual functional capacity ("RFC") formed by that testimony would be unable to perform any substantial gainful activity. *Id.* Plaintiff's counsel asked the VE if a person of Plaintiff's age, education, and PRW who had "poor ability to deal with work stress, and . . . would be absent for more than four days per month" would be able to perform any work. Tr. 71. The VE responded in the negative, noting

4

that "four days' absence was beyond what would be an acceptable tolerance for workplace absences." *Id.*

II. Discussion

    A. The ALJ's Findings

In his November 19, 2010, decision, the ALJ made the following findings of fact and conclusions of law:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

    2. The claimant has not engaged in substantial gainful activity since March 23, 2008, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

    3. The claimant has the following severe impairments: post traumatic stress disorder; depression/impulse control disorder; degenerative disease of the cervical and lumbar spine; right foot and ankle pain (20 CFR 404.1520(c) and 416.920(c)).

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light exertional level work with restrictions that require simple, routine tasks; a supervised environment; no required interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional stooping, twisting, crouching, kneeling, crawling and climbing of stairs or ramps; only occasional use of foot pedals or other controls with the right lower extremity; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery.

6. In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born February 24, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 16-25.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

7

considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## C. Analysis

Plaintiff asserts that: (1) the ALJ failed to properly assess the treating and evaluating physicians' opinions; (2) the ALJ failed to explain RFC findings; and (3) the ALJ failed to properly evaluate whether her back impairments met or equaled Listing 1.04. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

1.  Treating Physicians' Opinions

    a.  Dr. William Durrett

As outlined by the ALJ in his decision, Dr. Durrett began pain management treatment of Plaintiff in July 2008 for issues related to lumbar back pain. Tr. 367-68. Treatment records indicate Dr. Durrett treated Plaintiff with medication and lumbar facet injections. Tr. 366, 389, 464-69, 515-21, 660-663. On November 9, 2009, Dr. Durrett signed an "Attending Physician's Statement of Continuing Disability" ("Physician's Statement") that outlined his diagnosis and treatment of Plaintiff, and further described Plaintiff's functional limitations. Tr. 510-512. On the first page Dr. Durrett noted that his primary diagnosis was lumbago, and his secondary diagnosis was lumbar spinal stenosis. Tr. 510. The physical examination findings were: "minimal to moderate tenderness to the [right] L2-3, L3-4, L4-5 posterior elements to palpation." *Id.* The current treatment plan was listed as lumbar facet injections twice monthly. *Id.* The second page of the Physician's Statement contained functional capabilities, and noted that Plaintiff could sit for six hours, stand for two hours, and walk for one hour a day, with a handwritten notation of "sit most of day / stand not much / walk only to go to doctor." Tr. 511. Instead of circling the frequency of performing activities such as lifting/carrying, bending, kneeling, driving, and reaching, the form contained handwritten notations of "never" and "can't." *Id.* In response to the inquiry regarding the expected duration of the current restrictions or limitations, the handwritten response was: "can't lift, can't stand in sho[wer]." *Id.* The undersigned notes in a routine review of the Physician's Statement that it contains two different types of handwriting. The portions containing diagnosis, treatment, physician information and signature appear to be written by the doctor; the portions regarding functional capabilities,

10

consultations, prescriptions, and health insurance appear to be written by Plaintiff. *See* Tr. 510-12.

The ALJ referenced this "opinion" in his decision[4] and noted the limitations "essentially preclude even sedentary exertion." Tr. 23.  The ALJ further noted that "Dr. Durrett's treating and examining notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact limited to the extent that Dr. Durrett found the claimant." *Id.*  The ALJ held that "such opinion cannot be given great weight in arriving at a residual functional capacity." *Id.*

Plaintiff takes issue with the ALJ's decision and asserts that the ALJ failed to properly explain his finding arguing that "given the objective evidence of serious physical impairments to her low back, hip, and low extremities, including evidence of nerve root impingement by MRI, Dr. Durrett's opinion was well supported by his treating notes." Pl.'s Br. 27, ECF No. 22.  The Plaintiff alleges that in rejecting Dr. Durrett's opinion, the ALJ formulated his own RFC and exercised an expertise that he does not possess. Pl.'s Br. 28.  The Commissioner counters that substantial evidence supports the ALJ's evaluation of Dr. Durrett's opinion, citing to Dr. Durrett's treatment notes from January 2009, March 2009, and June 2009. Def.'s Br. 8-9, ECF No. 25.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative

---

[4] On page ten of the decision, the ALJ mistakenly notes the date of the "opinion" as January 9, 2009. Tr. 23. The undersigned considers this to be a scrivener's error, as the ALJ cited the correct date of November 9, 2009, when referring to the Physician's Statement on page nine of the decision. Tr. 22.

11

implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(c)(2), § 416.927(c)(2). Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

In reviewing the ALJ's consideration of Dr. Durrett's treatment of Plaintiff, the court is focused on whether the ALJ's opinion is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. The ALJ's decision not to give great weight to Dr. Durrett's November 2009 assessment is supported by substantial evidence. In the recitation of medical evidence, the ALJ recounts Plaintiff's treatment history with Dr. Durrett. The ALJ found that Dr. Durrett's opinion was not supported by his own treating and examining notes. On review of the decision, the undersigned finds that in his discussion of Dr. Durrett's treatment of Plaintiff, the ALJ applied the requisite factors in assigning his weight to

12

the November 2009 opinion. For example, the ALJ refers to other treatment notes which reference the length, nature and extent of the treating relationship. Tr. 18-22. In light of the foregoing, the ALJ's evaluation of Dr. Durrett's opinion was supported by substantial evidence. Accordingly, the undersigned recommends that the determination in this regard be affirmed.

      b. Dr. David Steiner

Beginning with a Psychiatric Evaluation in September 2008, Dr. Steiner treated Plaintiff for PTSD, depression, anxiety, and impulse control disorder. Tr. 384, 413-15, 455-60, 513-14, 524-27, 627-30, and 652-58. On July 23, 2010, Dr. Steiner completed a Medical Opinion Re: Ability To Do Work-Related Activities that rated Plaintiff's mental ability to perform unskilled, semiskilled, and skilled work. Tr. 627-29. Dr. Steiner also rated Plaintiff's mental ability and aptitude needed to do particular types of jobs. Tr. 629. Of the 16 categories related to unskilled work, Dr. Steiner rated Plaintiff "good" in 3 categories, "fair" in 5 categories, and "poor" in 8 categories. Tr. 627-28. Dr. Steiner explained his findings by stating that Plaintiff was diagnosed with PTSD and "she has frequent overwhelming anxiety, fears for her life [and] has flashbacks to trauma on a daily basis. In office she displays labile mood, she is loud [and] irritable." Tr. 628. In his decision, the ALJ interpreted this opinion as "essentially consistent with a capacity for unskilled work." Tr. 23. The ALJ did not give Dr. Steiner's opinion controlling weight for determining Plaintiff's RFC, but noted that "certain aspects of his opinion are in fact consistent with the [RFC] determined in this decision." *Id.*

Plaintiff asserts that the ALJ's characterization of Dr. Steiner's opinion is inaccurate and that is it unclear from the ALJ's analysis what weight he gave to the opinion. Pl.'s Br. 29-30. Plaintiff specifically cites to the portion of Dr. Steiner's opinion indicating Plaintiff's condition would cause her to miss more than four days a month from work, which would be incompatible

13

with full-time employment. *Id.* at 30. Plaintiff submits the matter should be remanded so the ALJ can "correctly identify Dr. Steiner's restrictions, indicate the weight that is accorded his opinion, and provide[] a specific rationale for any portion of the opinion which is not accepted by the ALJ." Pl.'s Br. 31.  Referring to Dr. Steiner's July 2010 opinion, the Commissioner argues that the "ALJ is not obligated to credit an entire portion of a treating provider opinion; he may credit certain aspects, and reject others." Def.'s Br. 10. The Commissioner asserts the ALJ's decision reflects his assignment of weight, and the ALJ "clearly explained why he did not credit the portions of Dr. Steiner's opinion that indicated Plaintiff was not able to work." *Id.* at 11.

The ALJ found Plaintiff's severe impairments included PTSD, and depression/impulse control disorder, Tr. 16, and limited Plaintiff to work that required "simple, routine tasks; a supervised environment; and no required interaction with the public or 'team'-type interaction with coworkers," Tr. 17. With these limitations, the ALJ purportedly took into account Plaintiff's mental impairments. Tr. 23. The ALJ offered little explanation for why he discounted Dr. Steiner's limitations while finding Plaintiff has some specific limitations as a result of her PTSD and depression. The ALJ did not discuss any medical evidence that conflicted with Dr. Steiner's opinion. Although an ALJ is free to accept or reject all or part of an opinion regarding a claimant's medical condition, he is not free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render. *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (finding ALJ erroneously "exercised an expertise he did not possess" by discounting orthopedist's conclusions regarding claimant's functional limitations); *see also Gibson v. Astrue*, 2:10-40, 2011 WL 587170 (W.D. Va. Feb. 10, 2011) (recommending remand when ALJ disregarded uncontradicted psychological opinion).

14

In considering Dr. Steiner's opinions, the ALJ noted Dr. Steiner's conclusion that Plaintiff would miss more than four days per month. Tr. 22. However, the ALJ did not address, or even mention, the other portions of the opinion that rated Plaintiff's mental abilities as "poor," nor does he explain his basis for rejecting those portions of the opinion. "Absent contrary medical evidence," the Commissioner is not free to reject the evidence of a reliable expert. *Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988). The undersigned recommends this matter be remanded for further evaluation of Plaintiff's mental RFC, including Dr. Steiner's opinions, in accordance with this Report.

### c. Dr. Susan Tankersley

Dr. Tankersley conducted a one-time physical examination of Plaintiff on September 23, 2008. Tr. 407-11. Dr. Tankersley's impressions included the injuries Plaintiff sustained in her motor vehicle accident, along with her history of mild degenerative joint and disk disease, history of hypothyroidism, and history of gastroesophageal reflux disease. Tr. 411. Dr. Tankersley concluded by commenting: "*At this point, I suspect* the only positions that would be available to [Plaintiff] would be sedentary with the additional restriction of minimal use of her right upper extremity." Tr. 412 (emphasis added). In his evaluation of Dr. Tankersley's opinion, the ALJ concluded:

> I cannot give this opinion controlling weight in the determination of the claimant's residual functional capacity as this opinion was made soon after the claimant's treatment of her injuries sustained in the accident and Dr. Tankersley's opinion is without substantial support from the other evidence of record, which renders it less persuasive.

Tr. 23.

Plaintiff asserts that Dr. Tankersley "in no way indicated in her opinion that the restrictions provided were only temporary" and that the medical evidence as a whole supports

15

her restrictions. Pl.'s Br. 32-33. The undersigned disagrees. Dr. Tankersley specifically qualified her opinion, limiting it to that point in time. Tr. 412. The ALJ properly noted his reason for not attributing controlling weight to the opinion having considered Plaintiff's treatment history for her injuries and pain. The undersigned finds that the ALJ's evaluation of Dr. Tankersley's opinion is supported by substantial evidence in the record.

### 2.     Explanation of RFC

Plaintiff next asserts that the ALJ's RFC findings regarding Plaintiff's mental impairments are not adequately explained in the decision. Pl.'s Br. 34. Because the undersigned has recommended remand for further consideration of Plaintiff's mental impairments, detailed analysis of this allegation of error is not possible at this point. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments). Therefore, the undersigned does not consider Plaintiff's allegation regarding the ALJ's mental RFC determination.

Plaintiff also asserts the ALJ failed to "explain with any specificity how the medical evidence supported the actual findings that were made" with regard to the ALJ's physical RFC assessment. Pl.'s Br. 35. The Commissioner argues that "the ALJ provided specific reasons for declining to afford controlling weight to the opinions of Drs. Durrett and Tankersley" and Plaintiff "failed to demonstrate any error in the ALJ's reliance on the state agency findings that she could lift 20 pounds." Def.'s Br. 14.

Social Security Ruling 96–8p, 1996 WL 374184, at *7, provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and

> describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

The ALJ determined Plaintiff had the RFC to perform "light exertional level work" with the restrictions of "no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional stooping, twisting, crouching, kneeling, crawling and climbing of stairs or ramps; only occasional use of foot pedals or other controls with the right lower extremity; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery." Tr. 17. While the ALJ provided a narrative discussing the various physicians' statements, he did not provide any information describing the evidence he considered to support his RFC assessment. Accordingly, the undersigned is unable to determine if his assessment is supported by substantial evidence. On remand, the ALJ should revisit his RFC assessment for Plaintiff's mental and physical capabilities.

### 3.     Listing 1.04

Plaintiff's final assertion of error is that the "ALJ decision provides no proper rationale to conclude [Plaintiff] does not meet listing 1.04 A." Pl.'s Br. 37. The Commissioner argues that Plaintiff fails to meet the criteria for Listing 1.04 because she does not demonstrate an inability to ambulate effectively. Def.'s Br. 14-15. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Listing 1.00 covers the musculoskeletal system, and Listing 1.04 states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

> fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. *With*:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> *or*
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> *or*
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Pt. 404, Subpt. P, App. 1, § 1.04 (emphasis added).  The ALJ determined in Step Two that Plaintiff had the severe impairments of degenerative disease of the cervical and lumbar spine and right foot and ankle pain. Tr. 16. At Step Three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1." Tr. 17.  A thorough reading of the decision exposes the finding as simply an observation of the ALJ for which he provided no support. Plaintiff asserts that the medical record confirms nerve root compression and that an MRI specifically observed likely compression of the S1 nerve root. Pl.'s Br. 38.  In his decision, the ALJ cited to the same MRI and medical records from Dr. Durrett noting positive straight leg raising. Tr. 19. The Commissioner erroneously asserts that Plaintiff must also demonstrate that she meets the criteria of Listing 1.04C.  Def.'s Br. 14. However, as noted by Plaintiff in her Reply Brief, Listing 1.04 includes three subparts "of which the claimant must meet the requirements of A or B or C." Pl.'s Reply 7, ECF No. 28.

Generally, it is the responsibility of the ALJ to decide the legal question of whether a listing is met by a claimant's impairments. *See* SSR 96-6p. Here, the ALJ did not follow the appropriate procedure for explaining his listing determination. He did not set forth the criteria for meeting the listings, he did not compare the listed criteria with Plaintiff's symptoms, and he did not state explicitly his reasons for finding that Plaintiff's impairments did not meet a listed impairment. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Therefore, the undersigned finds that the ALJ's decision regarding whether Plaintiff meets Listing 1.04 is not supported by substantial evidence, and recommends remand on this issue.

III. Conclusion and Recommendation

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

January 27, 2014                                      Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**